# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| David Aguilar, | : | Case No. 3:07CV3727 |
| | : | |
| Plaintiff | : | Judge Jack Zouhary |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| Defendant | : | |

This action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3)seeking judicial review of defendant's final determination denying plaintiff's claims for disability benefits, (DIB), 42 U.S.C. §§416, 423 and supplemental security income benefits (SSI), 42 U.S.C. §1381 et seq., is pending decision upon the parties' submissions on the merits, pursuant to which plaintiff seeks entry of final judgment in his favor, alternatively, an order of remand, and defendant seeks final judgment upholding the decision below.[1]

Plaintiff's right to benefits under both programs is dependent upon a showing that he is disabled, as that term is defined in the Social Security Act.  Disability is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

---

[1]Although in the concluding portion of plaintiff's submission the only relief sought is a final judgment in the plaintiff's favor awarding the benefits sought, in the preceding paragraph and in plaintiff's reply brief reversal with remand for further proceedings is suggested as appropriate alternative relief.

for not less than 12 months."  42 U.S.C. §§423(d)(1), 1383c(a).  The programs differ with regard to other qualifying criteria.  The disability benefits statute requires "fully insured" status, which focuses on the period of time the claimant has worked while covered by Social Security.  The SSI program focuses on income and resources as basic eligibility factors.

Plaintiff applied for benefits on January 5, 2004, alleging an onset date of November 1, 2002.  In an accompanying Disability Report - Adult the questions "What are the illnesses, injuries or conditions that limit your ability to work?" and "How do your illnesses, injuries or conditions limit your ability to work?" were answered "chronic back pain due to 3 discs pushing up against spinal cord causing numbness, sharp pains, back goes out" and "cannot lift over 20 lbs. for long periods of time, legs go numb, sharp pains throughout right side of body."[2]

Upon denial of plaintiff's claims at the state agency level hearing <u>de novo</u> before an Administrative Law Judge (ALJ) was requested.  A hearing pursuant thereto was convened on August 21, 2006, but the plaintiff did not appear.  Although at the outset the ALJ indicated that he intended to go forward without the plaintiff, and did in fact ask a few questions of a vocational expert who was present, he concluded that he should take testimony from the plaintiff, and a supplemental hearing was held on November 15, 2006.  At that proceeding the plaintiff and a vocational expert, Mr. Joseph Thompson, testified.[3]

The hearing started with the plaintiff, who stands 6 foot 3 inches tall, testifying that his weight was 406 pounds, down from the 456 pounds he had weighed the previous year.

---

[2]It is not clear who actually filled out the form.  The plaintiff maintains that he is illiterate, and the printing on the form does not correspond to the appearance of his signature.

[3]That hearing was held by video conference, with the plaintiff, his counsel and the vocational expert in Toledo, Ohio and the ALJ in Fort Wayne, Indiana.

He ascribed his alleged inability to work to constant low back pain.  When asked if he had good days and bad days the plaintiff responded that he had bad days three or four times a month when "I can't do nothing.  I just sit there.  I lay down, I sit down.  I do anything to get comfortable because the pain is just two much."  He has been prescribed Vicodin for three years, along with Naproxen for about two years.  He testified that the limited work he did around the house was performed while "scooting" a chair about, and that he used a cane for walking.  He stated that he had no sensation from his knees down.  In addition to his other problems he is also diabetic.  In July 2005 he attempted suicide, by overdosing on sleeping pills, because "I couldn't work, I couldn't provide for my kids, and you know, we were—I don't now.  It was—everything was just coming down on me, and I mean, I'm depressed because I can't work no more, you know.  I want to go out and get a job, I would like to, but I can't."

On June 25, 2007 the ALJ entered his decision finding the plaintiff not disabled.  The headings on his "Findings of Fact and Conclusions of Law" were:

1.   The claimant met the insured status requirements of the Social Security Act through December 31, 2002.

2.   The claimant has not engaged in substantial gainful activity since November 1, 2002, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3.   The claimant has severe impairments (20 CFR 404.1520(c) and 416.920(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.   The claimant is reliable.

3

6.  After careful consideration of the entire record, it is determined that the claimant has the residual functional capacity to perform a restricted range of sedentary work activity with the additional limitations described below.

7.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8.  The claimant was born on August 1, 1976, and was 26 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

9.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

12. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2002, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

The ALJ's decision stands as the defendant's final determination consequent to denial of review by the Appeals Council on October 9, 2007.

This Court is constrained to note that the plaintiff's eligibility for a DIB award was quite limited, there being barely a sixty day window between his alleged onset date of November 1, 2002 and the expiration of his fully insured status on December 31, 2002, although he remained eligible for an award of SSI if he was disabled at any time as of or after his application date of January 5, 2004. Considering that much of the medical evidence relied upon by the plaintiff was generated

well beyond December 31, 2002,[4] it could be that his claim for DIB would fail while his claim for SSI might succeed. This potentially important consideration was not addressed by the ALJ in his decision, nor is it recognized in the parties' briefing.

On this appeal plaintiff's primary argument is that "The ALJ's failure to provide adequate justification for the rejection of key evidence from Mr. Aguilar's treating physician, Dr. Ware, warrants the reversal of this case."  It is also argued that: "Aguilar's RFC [residual functional capacity] supports a finding of disability"; "Aguilar's impairments meet or equals the Listings of Impairment for back impairments in combination with morbid obesity"; and "Aguilar was denied a full and fair hearing," this last position resting upon a limitation by the ALJ of plaintiff's counsel's examination of the vocational expert.

In this Court's opinion there is a fundamental flaw in the ALJ's approach to adjudicating this case, as well as defects in his decision, that call for vacating the defendant's final determination and remand for further proceedings.

One of those defects is the previously noted fact that the ALJ did not consider whether the same medical evidence bore upon the plaintiff's DIB and SSI claims.  It is entirely possible that denial of the former as not supported by the medical evidence may not call for the same conclusion as to the latter.

This Court also has great difficulty with that portion of the ALJ's decision headed "The claimant is reliable," which includes the statement "The claimant's description of his activities and functioning is not questioned, and appears to be consistent with his previous statements to the Social

---

[4]The statement in plaintiff's brief "In November 2002 his back pain increased and he became unable to work (TR 491). As a consequence he underwent surgery (TR 290) for L2-L4 laminectomy and repair of a cerebral spinal fluid leak (CSF) leak [sic]" would seem to suggest that the surgery took place soon after the plaintiff stopped working.  In fact the operation was performed in October 2005, almost three years later, when his condition apparently worsened.

Security Administration."  If that were so, the plaintiff should have been deemed disabled. However, the statement just quoted continues "but some of these limitations seem exaggerated compared to the medical evidence of his condition during most of the period at issue in this case, as will be discussed below."  This Court finds these propositions to be facially inconsistent.  Either the plaintiff is reliable with his descriptions of his activities and functioning unquestioned or he is exaggerating his limitations, but this Court cannot conceive of both of these being true.

Turning to the ALJ's assessment of the evidence originating with the plaintiff's treating physician, Dr. Ware, it appears that among the ALJ's reasons for discounting Dr. Ware's opinion was that: "There is no conclusive evidence of disc herniation (Exhibit 17F/6)"; "Furthermore, Dr. Ware is not an orthopedic specialist, and his treatment notes do not contain the careful findings needed to support such an opinion"; and "Although Dr. Ware is a treating physician, he is a family physician, not an orthopedic specialist, and his progress notes do not contain significant findings to support the extreme limitations he gave.  Instead, they primarily report the claimant's subjective symptoms and discuss medications."

This Court has major problems with such rationale.

First, the exhibit cited by the ALJ as negating the presence of a herniated disc, 17F/6, is an MRI performed June 16, 2006, and on page 7 of the exhibit, the diagnostic impression is set out. It reads:

**IMPRESSION:**

1.  Abnormality in the anterior epidural space at L3-L4 to the right with moderate degree of compression of the thecal sac.  There is history of surgery at this level.  These changes are probably from post surgical scarring and some enhancement.  However, <u>recurrent disc herniation cannot be ruled out in this compromised examination</u>. The neural foramina are otherwise patent.

6

2.    There is disc bulge or <u>small disc herniation at L5-S1</u> with mild degree of soft tissue spinal stenosis.

3.    There is disc bulge at L4-L5 with mild degree of soft tissue spinal stenosis.

4.    Degenerative arthritic changes are seen in the lumbar region.  NO evidence of spondylolisthesis.

(Emphasis added.)  Beyond this, there is the fact that in October 2005 the plaintiff underwent emergency surgery to remedy a condition known as cauda equina syndrome, which is characterized as "Dull aching pain of the perineum, bladder and sacrum, generally radiating in a sciatic fashion, with associated paresthesias and areflexic paralysis, <u>due to compression of the spinal nerve roots</u>," <u>Dorland's Illustrated Medical Dictionary, 30th Ed.</u>, p. 1813.  An MRI taken at that time, complicated by the plaintiff's obesity, reflected generalized narrowing of the spinal canal—"these changes are most severe at the L3-4 level where the canal is severely narrowed due to its configuration. Superimposed upon this is what appears to be generalized severe disc bulge.  <u>The lack of adequate contrast within the thecal sac at this location makes it difficult to exclude focal herniated component.</u>"  (Emphasis added.)

In fact, in his decision the ALJ contradicts his statement regarding the lack of evidence of the presence of a disc herniation.  At one point he states that "An MRI was performed on August 13, 2002 which revealed a small broad-based herniation in the right neural foramina at L5-S1 superimposed upon a disc bulge."  Thereafter he recognized that the August 2006 MRI was read by the radiologist as not ruling out a recurrent disc at L3-L4.

Insofar as Dr. Ware's status as a "family physician, not an orthopedic specialist" is concerned, this Court is unaware of any Sixth Circuit precedent to the effect that a treating physician must be a specialist in order that his/her opinion carry substantial weight.

7

As was recently reiterated in Howard v. Commissioner of Social Security, 276 F.3d 235, 240 6 (6th Cir. 2002), citing to Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985), while it is often said that the opinion of a treating physician on the ultimate issue of disability is not binding, see, Le Master v. Weinberger, 533 F.2d 337 (6th Cir. 1976) that is not always the case.  In King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984) the court stated the controlling rule to be "Indeed, it has long been the law that substantial deference--and, if the opinion is uncontradicted, complete deference--must be given to such opinions and diagnoses."  See also, Colwell v. Gardner, 386 F.2d 56, 72 (6th Cir. 1967); and Walston v. Gardner, 381 F.2d 580, 585 (6th Cir. 1967).

To be entitled to significant weight the conclusory opinion of a treating physician must be supported by clinical or diagnostic findings.  Kirk v. Secretary of Health and Human Services, 667F.2d 524, 538 (6th Cir. 1981).  However, it is not necessary that such supporting detail be contained in the same document in which the physician's opinion is expressed.  It is sufficient if that opinion is supportable by other medical evidence in the record, including clinical or diagnostic findings of other physicians.  See, Garner v. Heckler, 745 F.2d 383, 391 (6th Cir. 1984).

The Social Security regulations recognize that a treating physician is uniquely qualified to offer insights into his/her patient's condition.  20 C.F.R. §404.1527(2) speaks to the subject of "treatment relationship."  In pertinent part it provides:

> (2) *Treatment relationship*.  Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations, or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion.  We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

(i) *Length of the treatment relationship and the frequency of examination*.  Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.  When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii) *Nature and extent of the treatment relationship*.  Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion.  <u>We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories.</u>

(Emphasis added.)  It is thus clear that the more important factor as regards the weight to be accorded the opinion of a treating physician is the nature and extent of the physician/patient relationship, and not whether the physician is a generalist or a specialist.

What then does the record reflect with regard to the opinion of Dr. Ware, whom the record reflects was treating the plaintiff from at least late 2001.

Under date of July 24, 2006 the doctor completed a Residual Functional Capacity form, in which he stated that the plaintiff suffered from spinal stenosis and morbid obesity.  Therein he indicated that the plaintiff could lift/carry weights of up to ten pounds, could sit for less than six hours in an eight-hour workday and stand/walk for less than two hours.  He also indicated that the plaintiff had the need to spend part of each day lying down, and over the course of an eight-hour

9

workday would be required to take unscheduled/unpredictable work breaks of indefinite duration. He also stated that as a result of his impairments the plaintiff would miss four or more days of work a month.  At about the same time he completed a Basic Medical form for the county welfare authorities, and therein he set out DM (diabetes), morbid obesity and L3/4 herniated disc as the plaintiff's medical conditions, and limited the plaintiff to standing/walking and sitting for one hour each in an eight-hour workday.  He checked off boxes reflecting that the plaintiff was unemployable, and that he would remain so for twelve months or more.

The doctor's patient notes reflect continuing complaints of back pain over the several years of his treatment, with prescriptions of various pain medications in response thereto.

In this Court's opinion, the ALJ's stated reasons for rejecting Dr. Ware's opinions, including the generic statement that the doctor's "progress notes do not contain significant findings to support the extreme limitations he gave," take him from his assigned role of finder of the facts into the realm of "playing doctor" substituting his judgment as to the significance of the objective medical evidence for that of the treating physicians,[5] and do not satisfy the requirement of 20 C.F.R. §404.1527(2) that "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion" (emphasis added).

This calls for vacation of the defendant's final determination, which leads to the question of what relief should be afforded the plaintiff.

This Court's answer to that question is an order of remand pursuant to the fourth sentence of 42 U.S.C. §405(g) for further proceedings, including taking testimony from a medical expert.

---

[5]As this Court has repeatedly observed over the last year or so, more and more ALJ's are taking it upon themselves to analyze what is often complex medical evidence, rather than seeking the benefit of testimony from a qualified medical expert to assist them in reaching a properly informed decision.  That has almost uniformly led this Court to recommend reversal for further proceedings to obtain such evidence.

The reason for this is three-fold.

First, as noted at the outset of this decision, it is possible that the medical evidence will support a finding of disability, but not until after the plaintiff's fully insured status lapsed.  A medical expert could certainly shed light on this issue.

Next, it is possible that the medical evidence will support a finding of disability, but at a later date than the earliest date the plaintiff would be eligible for an award of SSI.  Again, this calls for expert analysis of that evidence.

Finally, it is possible that the medical evidence does not compel the conclusion that the plaintiff is incapable of even sedentary work, as he must be in order to be deemed disabled. Notwithstanding, the evidence originating from Dr. Ware, this Court is not prepared to say whether this record does or does not do so.

It is, therefore, recommended that such a judgement be entered in the plaintiff's favor.


s/DAVID S. PERELMAN
United States Magistrate Judge


DATE:   September 9, 2008


## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).